1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

### EASTERN DISTRICT OF CALIFORNIA

9  DONALD CATHEY,                                    )  1:10-cv-01562-LJO-BAM
                                                     )
10                                                   )  **FINDINGS AND RECOMMENDATIONS**
                                                     )  **REGARDING PLAINTIFF'S**
11              Plaintiff,                            )  **SOCIAL SECURITY COMPLAINT**
                                                     )
12     v.                                            )
                                                     )
13  COMMISSIONER OF SOCIAL                            )
    SECURITY,                                         )
14                                                   )
                                                     )
15              Defendant.                            )
    _____ )

16

17                          **I.    INTRODUCTION**

18         Plaintiff Donald Cathey ("Plaintiff") seeks judicial review of an administrative decision

19  denying his claim for disability benefits under the Social Security Act, Title II (the "Act").

20  Pending before the Court is Plaintiff's motion for summary judgment and the cross-motion for

21  summary judgment of defendant Commissioner of Social Security ("Commissioner").  Plaintiff

22  filed his complaint on August 27, 2010.  (Doc. 1.)  Plaintiff filed his summary judgment motion

23  on April 13, 2011. ( Doc. 13.)   The Commissioner filed his summary judgment cross-motion and

24  opposition on May 12, 2011.  (Doc. 14.)  Plaintiff filed his Reply Brief on May 27, 2011.  (Doc.

25  15.)  This matter was reassigned to the Honorable Barbara A. McAuliffe on October 17, 2011

26  (Doc. 16.) The matter is currently before the Court on the parties' briefs, which were submitted

27  without oral argument to United States Magistrate Judge Barbara A. McAuliffe for findings and

28  recommendations to United States District Judge Lawrence J. O'Neill.

## II.   BACKGROUND

**A.   Overview of Administrative Proceedings**

On March 2, 2007, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act. (Administrative Record ("AR") at 96-102.)  Plaintiff alleges he has not been able to work since September 20, 2006 due to a shoulder replacement procedure, right shoulder pain, back pain and pain in his legs and feet. (AR at 119.)

Plaintiff's application was initially denied and denied again on reconsideration. (AR at 54-55.)  Plaintiff requested a hearing before an administrative law judge (the "ALJ") (AR at 71), and testified at a hearing on April 15, 2009. (AR at 22-54.)  In a decision dated July 13, 2009, the ALJ found that Plaintiff was not disabled as defined by the Act because he could perform his past work as a civil drafter. (AR at 9-21.)  The Appeals Council denied review on June 29, 2010. (AR at 1-3.)  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1.)

**B.   Plaintiff's Background and Work Experience**

Plaintiff was born on July 31, 1952. (AR at 26.)  Plaintiff is 6'3" tall and  weighs approximately 300 pounds. (AR. at 26).  Plaintiff graduated from high school and attended two or three years of college, but did not receive a degree. (AR at 27, 125.)  Plaintiff received graphic arts training and worked as an art coordinator/digital artist screen maker from April 1985 through October 2003, and as a CAD drafter from October 2003 through September 2006. (AR at 27, 106, 125.)  Plaintiff previously worked at Tri-Tech graphics, but stopped because the company closed. (AR at 26-8.)  Prior to Tri-tech's closing, Plaintiff was put on state disability due to pain in his left shoulder, neck and head. (AR at 28.)

Plaintiff injured in left shoulder in 1989 while picking up a heavy silk screen at work. (AR at 169.)  Plaintiff underwent arthroscopic surgery to stabilize his shoulder in 1990. (AR at 169.)  Plaintiff had a follow-up surgery the next year, and a third surgery subsequently thereafter. *Id.*  In 2003, Plaintiff underwent a total joint replacement, which appeared to benefit his range of motion, but did not relieve his pain. *Id.*  Plaintiff eventually developed pain in his right shoulder due to arthritis and overuse. *Id.*

**C.     Plaintiff's Testimony At the Administrative Hearing**

On April 15, 2009, Plaintiff provided testimony at an administrative hearing before an ALJ to dispute a previous determination that Plaintiff was not entitled to disability insurance benefits.  (AR at 24.)  Plaintiff's counsel was present.  (AR at 24.)

Plaintiff testified that the following medical problems keep him from working: diabetes, neuropathy of his legs and feet, lower back pain, hip pain, pain in his right and left shoulder, neck pain, carpal tunnel, pain and numbness in both hands.   (AR at 30.)  Plaintiff testified his diabetes causes pain to radiate into his feet and legs at least two to three times a day, for anywhere from ten minutes to an hour - and that his legs then go numb.  (AR at 30.)  Standing makes this condition worse.  (AR at 30.)  Plaintiff is currently taking pain medication, codeine with Tylenol 3, Tramadol, Ultram ER, Oxycodone.  (AR at 44.)  These medications are helpful, however, the pain medication impacts his ability to concentrate, and Plaintiff can only concentrate for 15-20 minutes before he tends to have trouble.  (AR at 46-7.)

Plaintiff claims to have good range of motion in his left shoulder, however, not without a great deal of pain.  (AR at 33.)  Plaintiff has difficulties raising his right arm above his shoulder.  (AR at 33.)   Plaintiff was previously receiving Cortisone shots into his shoulder and neck to help with the pain from his treating physician, but stopped because his insurance lapsed and his treating physician was no longer on his new carrier's list of in-network physicians.  (AR at 36-37.)

Plaintiff currently lives in a house with his wife.  (AR at 26.) Plaintiff testified that he has a driver's license, and drives, but can not drive long distances due to pain and numbness in his legs.  (AR at 26.)  Plaintiff helps his wife with laundry, sweeps the floor, but does not do any other chores around the house. (AR at 45.)  Plaintiff also goes shopping.  (AR at 46.)  In a typical day, Plaintiff wakes in the morning, checks his blood sugar, injects himself with diabetes medication and has breakfast.  (AR at 39.)  Once Plaintiff's medication "kicks in," Plaintiff "generally tr[ies] to go outside and feed the cats and walk around."  (AR at 39.)  Plaintiff then spends the remainder of his day at his house intermittently standing and sitting.  (AR at 39-40.) Plaintiff reads books, watches television and carves on occasion, however, the carving is now

1  difficult due to the pain in his shoulder and hands.  (AR at 40.)  Plaintiff now carves about two to

2  three times a week.  (AR at 40.)

3       Plaintiff testified that out of an eight hour day, Plaintiff lies down for about 30 minutes,

4  sits for about six hours, and spends an hour and a half standing and walking around.  (AR at 34.)

5  Plaintiff testified that he does these activities intermittently, as he can not stay sitting constantly,

6  and needs to move around.  (AR at 34.)  While Plaintiff is sitting, Plaintiff generally elevates his

7  feet about waist high due to the numbness and pain in his legs.  (AR at 35.)  Plaintiff testified

8  that if he keeps his feet down while sitting, his legs swell with water.  (AR at 35.)  Plaintiff takes

9  water pills for this symptom, which causes dehydration, dizziness, and frequent urination.  (AR

10  at 35-36.)

11       Plaintiff testified that the longest he can be on his feet at one time is for 15 minutes.  (AR

12  at 30.)  Plaintiff testified he can sit for up to an hour.  (AR at 31.)  Plaintiff testified that in an

13  eight hour day, Plaintiff could only reach out forward for a total of 10-15 minutes.  (AR at 33.)

14  Plaintiff testified he could only use his hands for about twenty minutes before he would have to

15  rest them for a couple hours.  (AR at 34.)  Plaintiff testified that the most he could lift was an 18

16  pound bag of dog food.  (AR at 42-43.)  Plaintiff testified in an eight hour work day with normal

17  breaks, Plaintiff could stand for three hours, sit for six or seven hours, but not constantly for any

18  of these activities.  (AR at 45, 47.)  Plaintiff also stated that he would need to have his feet up at

19  90 degrees in order to sit for 6 or 7 hours. (AR at 47.)

20       **1.     Testimony of the Vocational Expert, Judith Negerian**

21       During the administrative hearing, the ALJ called upon a vocational expert (the "VE") to

22  provide testimony regarding Plaintiff's ability to perform his past relevant work as a drafter.  The

23  ALJ posed two hypothetical questions to the VE.  The first hypothetical was for a 56 year old

24  individual with past relevant work experience as a drafter and screen maker.  This individual has

25  a combination of severe impairments and retains residual functional capacity of lifting and

26  carrying 20 pounds occasionally, 10 pounds frequently, retains the ability to stand, walk, and sit

27  six hours each, ability to climb ropes, ladders, and scaffolds, as well as occasionally reach

28

overhead with the non-dominant left upper extremity.  (AR at 50.)  The VE testified that such a

hypothetical person could perform his past work as a drafter.  (AR at 50.)

For the second hypothetical question, the hypothetical individual had the same

impairments and residual functional capacity as the first hypothetical individual, however, this

person has the residual functional capacity to lift and carry 18 pounds maximum, walk one hour

total, stand three hours total, sit six to seven hours maximum, has difficulty raising the right

dominant upper extremity over the shoulder level, as well as difficulty reaching to the front

bilaterally.  This individual also has difficulty using the hands bilaterally.  This individual must

also lie down 30 minutes per day and elevate the lower extremities during the day.  (AR at 50-

51.)  The VE testified that such an individual could not perform their past jobs, nor any other job

which exists in the national economy.  *Id.*

Plaintiff's counsel, Mr. Milam, asked the VE an additional hypothetical, which assumed

the same parameters as in the first hypothetical, however, with a restriction to occasional

reaching in all directions.  The VE stated such a person could not work as a civil drafter, nor any

other job in the national economy.  (AR at 51.)

**D.     Medical History**

**1.     Dr. Ara Soghomonian**

Dr. Ara Soghomonian was Plaintiff's primary care  physician from 1993 to 2009.  (AR at

214-320.)  The Record contains over one hundred pages of Dr. Sogomonian's examination notes

and observations regarding Plaintiff's condition.  (AR at 214-320.)

Dr. Soghomonian's handwritten notes, while largely illegible, present the following

relevant observations on Plaintiff's condition: (1) joint pain (AR at 279, 268); (2) obesity (AR at

277, 254, 252, 249, 248); (3) pain in his feet (AR at 277); (4) pain, swelling, numbness and

discoloration of the legs and feet (AR at 259, 258, 255, 250, 238, 237, 233, 222, 219, 218); (5)

pain and limited motion in his shoulders.  (AR at 250, 243)

On July 7, 2007, Dr. Soghomonian wrote that Plaintiff suffered from hypertension,

diabetes, degenerative osteoarthritis, post right shoulder arthroplasty, chronic obstructive

pulmonary disease, and sleep apnea.  Dr. Soghomonian concluded that, in his opinion, Plaintiff's

1   prognosis was poor, and Plaintiff was disabled.  (AR at 180.)  Dr. Soghomonian, however, did

2   not offer any opinions on Plaintiff's residual functional capacity, or specifically address

3   Plaintiff's working limitations.

4          **2.     Malcolm E. Ghazal**

5          Sometime in 2003, Dr. Malcolm Ghazel performed Plaintiff's left shoulder replacement.

6   (AR at 16, 162.)  In July of 2006, Plaintiff followed up with Dr. Ghazal.  (AR at 16, 162.)  At

7   that time, Dr. Ghazel stated Plaintiff had complained of some instability in his left shoulder, and

8   that Plaintiff was not using his left shoulder very much.  (Ar at 162.)  However, Dr. Ghazal noted

9   that Plaintiff had nearly full range of motion in his left shoulder, and Plaintiff was not

10  experiencing episodes of subluxations.  (AR at 162.)  In August of 2006, Plaintiff against

11  followed up with Dr. Ghazal.  (AR at 163.)  At this time, Plaintiff complained of minor episodes

12  of subluxation whenever he reached for something.  (AR at 163.)  Dr. Ghazal recommended

13  physical therapy.  (AR at 163.)  Dr. Ghazel, however, did not offer any opinions on Plaintiff's

14  residual functional capacity.

15         **3.     Dr. Kurt V. Miller, M.D.**

16         On September 14, 2006, Plaintiff met with Neurology specialist Dr. Kurt Miller.  (AR at

17  164-5.)  At the time, Plaintiff was unable to work the past two weeks due to the pain in his

18  shoulders.  *Id.*  Dr. Miller noted Plaintiff was experiencing pain in both his shoulders.  Plaintiff

19  could not raise his right arm above shoulder level, and his left arm could only be raised about 10-

20  15 degrees above his shoulder.  (AR at 164.)  Dr. Miller listed additional objective findings that

21  Plaintiff's shoulder was suffering from a decreased range of motion and decreased shoulder

22  girdle muscle bulk.  *Id.*

23         Dr. Miller diagnosed Plaintiff with shoulder degeneration and, taking notice of Plaintiff's

24  mood and disposition, diagnosed Plaintiff with depression.  (AR at165.)  Dr. Miller listed

25  Plaintiff as TTD, or temporary total disability.  *Id.*  Dr. Miller questioned whether Plaintiff's

26  shoulder condition could be fixed, and wrote the "shoulder will be perm[antly] disabled."  *Id.*

27  Dr. Miller also wrote Plaintiff would eventually need shoulder replacement surgery, and that

28

1  Plaintiff should apply for disability.  *Id.*  Dr. Miller, however, did not offer any opinions on

2  Plaintiff's residual functional capacity, or discuss Plaintiff's specific work limitations.

3  **4.     Dr. Thomas J.  O'Laughlin**

4  Dr. Thomas O'Laughlin, a physiatrist and one of Plaintiff's treating physicians, examined

5  Plaintiff on at least six occasions.

6  **i.     February 12, 2007 Examination**

7  Dr. Thomas J. O'Laughlin first saw Plaintiff on February 12, 2007.  Plaintiff was

8  complaining of pain in his left shoulder, neck, left arm, and numbness in his left arm.  (AR

9  at169.)  Plaintiff stated his shoulder replacement surgery in 2003 benefitted him quite a bit.  (AR

10  at 169.)  Plaintiff also claimed to experience constant moderate pain in his left shoulder, tingling

11  sensations in his left hand, numbness in his fingers and feet, and carpal tunnel in both hands  (AR

12  at 169.)  Dr. O'Laughlin also noted Plaintiff's five year history of diabetes.  *Id.*

13  Dr. O'Laughlin's exam entailed the following findings: Plaintiff was post left shoulder

14  replacement surgery, showing a markedly damaged, compromised and atrophied left shoulder.  It

15  appeared, however, that Plaintiff had an overall good outcome from shoulder replacement

16  surgery.  Plaintiff's shoulder rotation was restricted, and caused Plaintiff a great deal of

17  discomfort.   Plaintiff also showed diminished sensation in his hands, fingers and feet.  (AR at

18  170-71.)

19  **ii.     April 12, 2007 Examination**

20  Dr. O'Laughlin followed up with Plaintiff on April 12, 2007.  At the April 12, 2007

21  examination, Dr. O'Laughlin made the following observations: Plaintiff complained of numbness

22  in his hands, causing him to drop things occasionally.   Plaintiff claimed the pain in his shoulder

23  was a 5 out of 10 during the day, 6 to 7 out of 10 during the night.  Plaintiff took Iltram ER,

24  Celebrex and Codeine, which was helpful.  Dr. O'Laughlin gave Plaintiff four trigger point

25  injections in his shoulders, and Plaintiff claimed that the injections improved the pain in his left

26  shoulder by 50-75%, and increased his right shoulder abduction by 50%. (AR at 167.) At this

27  time, Dr. O'Laughlin noted that he saw "no reason that [Plaintiff] cannot make some further

28

1   progress given the improvements in the range of motion of his shoulders and comfortable

2   function after soft tissue anaesthetization and reduction in inflamation."  (AR at 168.)

3                   **iii.     July 16, 2007 Consultative Questionnaire**

4          On July 16, 2007, Dr. O'Laughlin completed a questionnaire regarding Plaintiff's claim

5   for disability benefits.  In response to the first question "[d]o you feel the medical problems for

6   which you have treated Mr. Cathey preclude him from performing any full-time work at any

7   exertional level, including the sedentary level," Dr. O'Laughlin replied "yes."  (AR at 182.)  Dr.

8   O'Laughlin listed Plaintiff primary impairments as back pain and shoulder replacement

9   procedure.  (AR at 182.)  The remainder of O'Laughlin's response regarding Plaintiff's primary

10  impairments is illegible.  Dr. O'Laughlin also opined that Plaintiff could only sit for 20-30

11  minutes without rest or support, and stand or walk for only 20 minutes without rest or support.

12  (AR at 182.)  Plaintiff is able to sit for 4 hours over an 8 hour period, with walking and reclining

13  every day.  (AR at 182.)  Dr. O'Laughlin also stated Plaintiff must lie down or elevate his legs

14  for two hours a day, and is limited to lifting 10 pounds.  The other limitations are illegible. (AR

15  at 182.)

16                  **iv.     September 20, 2007 Examination**

17         Dr. O'Laughlin followed up with Plaintiff on September 20, 2007.  At this time, Dr.

18  O'Laughlin made the following observations: Plaintiff's range of motion was mildly restricted.

19   Plaintiff continued to suffer from diminished sensation in his thumb and middle finger on the

20  left hand.  Plaintiff was suffering from persistent myofascial dysfunction in the left shoulder

21  girdle and neck with constant ongoing pain, however, the shoulder joint itself was functioning

22  "rather nicely."  Plaintiff has arthritis in his right shoulder, and carpal tunnel on his left hand.

23  (AR at 199-200.)

24                  **v.     January 21, 2008 Examination**

25         Dr. O'Laughlin followed up with Plaintiff on January 21, 2008.  At the time, Dr.

26  O'Laughlin made the following observations: Plaintiff was suffering from diabetic neuropathy

27  and carpal tunnel in both hands. (AR at 197.) .

28

### vi.     March 21, 2008 Examination

Dr. O'Laughlin followed up with Plaintiff on March 21, 2008.  At the time,  Dr. O'Laughlin made the following observations: Plaintiff was suffering from peripheral neuropathy, some mild right carpal tunnel, bilateral demyelinating cubital tunnel syndrome at the elbows, a moderate amount of muscular hardening at the upper trapezius and at the base of the neck, and Plaintiff revealed a restrictive range of motion on rotation to the right side but more so to the left side.  (AR at 195.)

### vii.     May 23, 2008 Examination

Dr. O'Laughlin followed up with Plaintiff on May 23, 2008.  At the time,  Dr. O'Laughlin made the following observations: Plaintiff had numbness to pinprick and pin roll testing in his hands and fingers.  An EMG showed diabetic neuropathy.  While noting the pain and restriction of motion in Plaintiff's left shoulder, Plaintiff's outcome was quite good for a shoulder replacement. (AR at 193.)

### 5.     Dr. Samuel B. Rush

Dr. Samuel B. Rush, a consultative examiner, conducted an examination of Plaintiff on May 2, 2007.  (AR at 175.)  Dr. Rush made the following observations: Plaintiff walked normally and got on and off the examination table easily.  Plaintiff had normal flexion and extension in both shoulders.  Reflexes were absent in Plaintiff's legs and feet, but he had normal balance.  (AR at 176.)  Dr. Rush concluded that Plaintiff would not have orthopedic functional limitations, and "could do routine walking, sitting, standing and lifting in accordance with his size and weight."  Dr. Rush also noted that Plaintiff could use both hands for simple grasping, pushing, pulling, and fine manipulation. (AR at 176-77.)

### 6.     Ian Ocrant, M.D.

Dr. Ian Ocrant, a state agency physician, reviewed Plaintiff's case file and conducted a case analysis on May 29, 2007.  (AR at 17.)  Dr. Ocrant offered the following opinions: Plaintiff could lift 20 pounds occasionally and 10 pounds frequently.  Plaintiff could stand, walk and sit for six hours in an eight hour day.   Dr. Ocrant opined that Plaintiff was limited in reaching with the left upper extremity.  Dr. Ocrant opined that Dr. O'Laughlin's and Dr. Soghomonian's

statements as to disability were not supported by the record.  (AR at 189.)  Dr. Ocrant concluded

that Plaintiff's shoulder replacement limited him to light work, and that since Plaintiff could

drive and remained cognitively intact despite taking narcotics, Plaintiff's pain did not cause any

additional limitations.  (AR at 191-92.)

**7.     John Edwards, M.D.**

Dr. Edwards took over as Plaintiff's treating physician after Plaintiff lost his insurance

coverage and was unable to continue seeing Dr. O'Laughlin (who was not on the State's list of

medical providers).  (AR at 18.)  On March 26, 2009, Dr. Edwards filled out a questionnaire

regarding Plaintiff's residual functional capacity.  (AR at 323.)  Dr. Edwards was unable to

answer questions concerning Plaintiff's ability to stand, walk or sit for specified durations of

time.  Dr. Edwards opined, however, that Plaintiff was precluded from lifting 20 pounds

occasionally and 10 pounds frequently.  (AR at 323.)  Dr. Edwards opined that due to Plaintiff's

left shoulder replacement, Plaintiff could not engage in prolonged heavy pushing, pulling or

grasping.  (AR at 323.)

**F.     ALJ Findings**

In his July 13, 2009 decision, the ALJ determined that Plaintiff was not disabled and not

eligible for disability benefits.  The ALJ made the following findings:

1.     Plaintiff has not engaged in substantial gainful activity since September 20, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*);

2.     Plaintiff has the following severe impairments: status post left shoulder replacement; obesity; and neuropathy(20 CFR 416.920(c)).  The ALJ further specified that (1) these impairments cause more than minimal limitations in work activity and must be considered severe, and (2) Plaintiff's carpal tunnel syndrome is considered non-severe as he testified that he carves wood as a hobby;

3.     Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526);

4.    Plaintiff has the residual functional capacity to: lift and/or carry 20 pounds occasionally, 10 pounds frequently; stand and/or walk 6 hours out of an 8 hour day;  sit for 6 hours out of an 8 hour work day; occasionally  climb ropes, ladders or scaffolds; and occasionally reach overhead with the non-dominant left upper-extremity (20 CFR 404.1567(b)).

5.    Plaintiff is capable of performing past relevant work as a civil drafter.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity;

6.    Plaintiff does not have a disability within the meaning of the Social Security Act. (AR at 22.)

## III.    DISCUSSION

### A.    Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g).  A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  Substantial evidence is "more than a mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  If the evidence could reasonably support a finding of either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated

regulations which contain, *inter alia*, a five-step sequential disability evaluation process.  20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found

that Plaintiff: (1) had not engaged in substantial gainful activity since September 20, 2006; (2)

has severe impairments based on the requirements in the Regulations (20 CFR §§ 404.1520(c));

(3) does not have an impairment or combination of impairments which meets or equals one of the

impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) is capable of performing

past relevant work as civil drafter, which does not require the performance of work-related

activities precluded by Plaintiff's residual functional capacity (20 CFR § 404.1565).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to

determine whether it is: (1) based on proper legal standards; and (2) supported by substantial

evidence in the record as a whole.  *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

**B.    The ALJ's Residual Functional Capacity Findings**

Plaintiff argues the ALJ improperly evaluated the medical evidence and Plaintiff's

subjective symptom testimony, and erred in finding that Plaintiff could perform his past relevant

work as a civil drafter.

**1.    Plaintiff's Credibility Analysis**

**i.    Legal Standard**

A two step analysis applies at the administrative level when considering a claimant's

subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  First, the

claimant must produce objective medical evidence of an impairment that could reasonably be

expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the

claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the

claimant's testimony regarding the severity of her symptoms only if he makes specific findings

that include clear and convincing reasons for doing so.  *Id*. at 1281.  The ALJ must "state which

1  testimony is not credible and what evidence suggests the complaints are not credible." *Mersman*

2  *v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001) ("The lack of specific, clear, and

3  convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court

4  to determine whether the ALJ's conclusion is supported by substantial evidence"); SSR 96-7p

5  (ALJ's decision "must be sufficiently specific to make clear to the individual and to any

6  subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons

7  for that weight").

8      An ALJ can consider many factors when assessing the claimant's credibility.  *See Light v.*

9  *Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  The ALJ can consider the claimant's

10  reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

11  testimony by the claimant that appears less than candid, unexplained or inadequately explained

12  failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

13  activities, claimant's work record, or the observations of treating and examining physicians.

14  *Smolen,* 80 F.3d at 1284; *Orn v. Astrue,* 495 F.3d 625, 638 (9th Cir. 2007).

15      With respect to a claimant's daily activities, the Ninth Circuit has consistently held that a

16  claimant does "not need to be utterly incapacitated in order to be disabled."  *Vertigan v. Halter,*

17  260 F.3d 1044, 1050 (9th Cir. 2011); *see also Cooper v. Bowen,* 815 F.2d 557, 561 (9th Cir. 1987)

18  (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed

19  eligible for benefits).  "[T]he mere fact that a plaintiff has carried on certain daily activities, such

20  as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract

21  from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th

22  Cir. 2011); *seel also Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir. 1988) ("disability claimants

23  should not be penalized for attempting to lead normal lives in the face of their limitations.")

24  Indeed, "many home activities are not easily transferable to . . . the more grueling environment of

25  the workplace, where it might be impossible to periodically rest or take medication." *Fair v.*

26  *Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).

27

28

13

1        **ii.**    **The ALJ's Rejection of Plaintiff's Subjective Symptom Testimony**

2                **Was Not Based on Substantial Evidence**

3            The ALJ found that Plaintiff's alleged level of disability was not consistent with his

4    activities of daily living. Specifically, the ALJ opined that Plaintiff's "wood carving activity and

5    model airplane building, the household chores and cooking he does do not appear consistent with

6    the disability he claims." (AR at 19.)

7            The reasons cited by the ALJ are not clear and convincing reasons for rejecting all of

8    Plaintiff's testimony. The Court agrees with the Commissioner that Plaintiff's activities of wood

9    carving and model airplane building are a clear and convincing reason for rejecting Plaintiff's

10   testimony regarding the persistence and limiting effects of the pain in his hands and shoulders.

11   However, this evidence does not undermine Plaintiff's testimony relating to his inability to stand,

12   walk, or sit for long periods of time without having to move around or elevate his legs.

13           Plaintiff's household chores of sweeping, laundry, light cooking and shopping do not

14   undermine Plaintiff's subjective symptom testimony relating to the diabetic neuropathy affecting

15   his legs and feet. *See Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2011). These activities

16   entail a minimal amount of walking over brief periods of time. Moreover, the ALJ failed to

17   provide any reason for rejecting Plaintiff's testimony regarding his inability to sit for long periods

18   of time, or his need to elevate his legs while sitting.

19           The ALJ's rejection of Plaintiff's subjective symptom testimony with respect to his

20   standing, walking and sitting limitations were not based on clear and convincing reasons. This

21   error significantly effected the limitations incorporated in the hypotheticals to the VE.

22   Accordingly, the error warrants reversal for reconsideration. On remand, the ALJ is instructed to

23   evaluate and incorporate, if appropriate, Plaintiff's standing, walking and sitting limitations in his

24   residual functional capacity finding.

25       **2.**    **The ALJ's Evaluation of Medical Opinion Evidence**

26           In the hierarchy of physician opinions considered in assessing a social security claim,

27   "[g]enerally, a treating physician's opinion carries more weight than an examining physician's,

28   and an examining physician's opinion carries more weight than a reviewing physician's." Under

the Regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling (SSR) 96-2p.   An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record.  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir.1998) (internal quotation marks and citation omitted).  "This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof." *Rodriguez v. Bowen,* 876 F.2d 759, 762 (9th Cir. 1989).

If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§ ] 404.1527." SSR 96-2p; *see id.* ("Adjudicators must remember that a finding that a treating source medical opinion is ... inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected.... In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.").  An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she or he provides "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830 (internal quotation marks and citation omitted).

Notwithstanding the above discussion, an ALJ is not required to accept an opinion of a treating physician, or any other medical source, if it is conclusory and not supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).  Additionally, an ALJ is not bound to a medical source's opinion concerning a claimant's limitations on the ultimate issue of disability.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  If the record as a whole does not support the medical source's opinion, the ALJ may reject that opinion.  *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  Items in the record that may

not support the physician's opinion include clinical findings from examinations, conflicting

medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Id.*;

*Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart,* 340 F.3d 871 (9th Cir.

2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir.1999).

> **i.      The ALJ's Rejection of Dr. Soghomonian's Disability Opinion Was**
> **Based on Specific and Legitimate Reasons.**

The ALJ gave no weight to Dr. Soghomonian's opinion that Plaintiff was disabled

because it was "not supported by reasoning, or by a statement of objective findings and

subjective complaints." (AR at 19.)  The ALJ also rejected Dr. Soghomonian's opinion on

Plaintiff's disability because Dr. Soghomonian did not discuss the specific limitations Plaintiff

has, but rather, merely expressed his conclusion that Plaintiff was totally disabled.  (AR at 19.)

Dr. Soghomonian's failure to incorporate a discussion of Plaintiff's specific limitations,

or Plaintiff's residual functional capacity, is a specific and legitimate reason for rejecting Dr.

Soghomonian's summary conclusion that Plaintiff was disabled.  A statement by a medical

source, even a treating source, that a claimant is disabled is not entitled to any special

significance or weight.  *See* 20 CFR § 404.1527(e)(3); *Batson,* 359 F.3d at 1195.  The final

decision on disability - a legal determination - is reserved for the ALJ.  The ALJ's decision on a

claimant's disability is generally predicated on medical opinions based on objective findings

which suggest  work-related limitations.  Dr. Soghomonian, while providing significant objective

findings[1], failed to offer any opinions on Plaintiff's work-related limitations.  Accordingly, the

ALJ correctly rejected Dr. Soghomonian's conclusory assertion that Plaintiff was disabled.

---

[1]  For example, Dr. Soghomonian's July 7, 2007 handwritten note to the ALJ states that "Plaintiff suffered from hypertension, diabetes, degenerative osteoarthritis, post right shoulder arthroplasty, chronic obstructive pulmonary disease, and sleep apnea."  Moreover, the Record contain over 100 pages of Dr. Soghomonian's observations from over a decade of treating Plaintiff.  These observations detail a lengthy history of joint pain (AR at 279, 268), obesity (AR at 277, 254, 252, 249, 248), pain, swelling, numbness and discoloration of Plaintiff's legs and feet (AR at 259, 258, 255, 250, 238, 237, 233, 222, 219, 218), and pain and limited motion in Plaintiff's right shoulder (AR at 250, 243).

ii.    **The ALJ's Rejection of Dr. Edward's Disability Opinion Was Based on Specific and Legitimate Reasons.**

The ALJ gave no weight to the opinion of Dr. Edwards, reasoning that Dr. Edwards "[did] not give a discussion of his reasoning and [did] not discuss the objective findings and subjective complaints, other than listing the fact that [Plaintiff] had a shoulder replacement surgery." (AR at 19.) The ALJ continued: "Simply put, the doctor does not give the necessary support for his opinion, which states that he does not know whether the claimant is restricted to no more than sedentary work, but does believe that he is not able to lift 20 pounds occasionally and 10 pounds frequently." *Id.*

Dr. Edward's failure to provide support for his opinions on Plaintiff's limitations is a specific and legitimate reason for rejecting his opinion. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). Moreover, Dr. Edwards inability to answer basic questions about Plaintiff's standing, walking and sitting limitations undermines any argument that his opinions as a "treating" physician should carry substantial weight. This, too, is a specific and legitimate reason for rejecting his opinions of Plaintiff's disability limitations.

iii.    **Plaintiff's Argument That The ALJ Rejected the Opinions of Dr. Miller Misstate the Record**

Plaintiff argues that the ALJ rejected the September 20, 2006 opinion of Plaintiff's treating physician, Dr. Miller, that Plaintiff's condition worsened to the point that he would need another shoulder replacement surgery. The ALJ, however, did not explicitly reject Dr. Miller's opinion. Rather, the ALJ observed that "[n]either Dr. Ghazal nor Dr. Miller expressed an opinion on the claimant's residual functional capacity." (AR at 19.) The ALJ is correct. Dr. Miller did not offer any opinions on Plaintiff's specific limitations. As such, there was no opinion for the ALJ to reject. Rather, Dr. Miller's medical findings and observations, like those of Dr. Soghomonian, are to be viewed as evidence to be evaluated in the Record as a whole.

17

1     **iv.     The ALJ's Rejection of Dr. O'Laughlin's Medical and Limitation**

2              **Opinions Was Not Based on Specific and Legitimate Reasons**

3          The ALJ gave "no weight" to the opinion expressed by Dr. O'Laughlin.  The ALJ stated

4    Dr. O'Laughlin's opinions expressed in the disability questionnaire were not supported by

5    reasoning nor did it contain a statement of objective findings and subjective complaints.  (AR at

6    19.)  The ALJ also noted Dr. O'Laughlin's previous statement that Plaintiff's shoulder joint was

7    functioning nicely and that Plaintiff had a good result for a shoulder replacement surgery.  (AR at

8    19.)

9          The ALJ's reasons for rejecting the medical opinion evidence of Dr. O'Laughlin are not

10   specific and legitimate.  The ALJ is incorrect that Dr. O'LAUGHLIN's opinion is not supported

11   by reasoning and does not discuss objective findings and subjective complaints.  While the one-

12   page questionnaire may not contain this information, the Administrative Record contains a

13   detailed account from Dr. O'Laughlin regarding Plaintiff's subjective complaints and Dr.

14   O'Laughlin's objective findings.

15         At the February 12, 2007 examination,  Dr. O'Laughlin noted that while Plaintiff had an

16   overall good outcome from shoulder replacement surgery, Plaintiff's shoulder was markedly

17   damaged and atrophied, which caused constant pain in his left shoulder. (AR at 169-171.)  Dr.

18   O'Laughlin also noted a tingling sensations in Plaintiff's left hand, numbness in his fingers and

19   feet, and carpal tunnel in both hands  (AR at 169.)  At the April 12, 2007 Examination, Dr. Dr.

20   O'Laughlin again noted the numbness in Plaintiff's hands, as well as the pain in Plaintiff's

21   shoulders, which required trigger point injections.  (Ar at 167-168.)  On September 20, 2007, Dr.

22   Dr. O'Laughlin stated that although the Plaintiff's shoulder joint was "functioning nicely,"

23   Plaintiff's range of motion was restricted, and Plaintiff was suffering from persistent myofascial

24   dysfunction.  (AR at 199-200.)  On January 21, 2008, March 21, 2008, and May 23, 2008, Dr.

25   O'Laughlin wrote that Plaintiff suffered from diabetic neuropathy.  (AR at 197.)

26         The ALJ is required to evaluate the medical statements of a treating physician found in

27   the Record as whole when considering a physician's medical opinion evidence.  Here, the ALJ

28

only looked to the one-page questionnaire in a vacuum.  Notably, the ALJ looked outside this

one-page questionnaire to suggest that Dr. O'Laughlin's statements regarding the success of the

shoulder replacement surgery contradicted Dr. O'Laughlin's medical opinions regarding

Plaintiff's disability.  The ALJ must also look to the entirety of Dr. O'Laughlin's observations

when determining whether his medical opinions on Plaintiff's residual functional capacity are

supported.

Additionally, while the medical opinions of Dr. Soghomonian and Dr. Miller fail to

discuss Plaintiff's specific limitations, their objective medical findings, as well as their account

of Plaintiff's subjective claims, are wholly consistent with Dr. O'Laughlin's opinions.

Specifically, Dr. Soghomonian's observations over the course of a decade of treating Plaintiff are

highly probative in evaluating the medical opinions offered by Dr. O'Laughlin.

Regarding Dr. O'Laughlin's statement that Plaintiff had a good result for a shoulder

replacement surgery, this statement does not undermine Dr. O'Laughlin's medical opinions

concerning Plaintiff's limitations.  In those instances where Dr. O'Laughlin made such a

statement, they were accompanied by qualifications that Plaintiff had limited range of motion,

and was in constant pain.  Moreover, such statements do not undermine Dr. O'Laughlin's

opinions regarding Plaintiff's standing, walking and sitting limitations.  As the second

hypothetical to the VR demonstrated, incorporating the standing, sitting and walking limitations

suggested by Dr. O'Laughlin would have resulted in a finding of disability.

Accordingly, the ALJ failed to provide specific and legitimate reasons for rejecting the

medical opinion testimony of Dr. O'Laughlin.  On remand, the ALJ is instructed to reconsider

the medical opinion testimony offered by Dr. O'Laughlin in making his residual functional

capacity finding.

## CONCLUSION

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the

power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv*., 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, this Court RECOMMENDS that:

1.    Plaintiff's motion for summary judgment (Dkt. No. 15) is granted;

2.    The Commissioner's cross-motion for summary judgment (Dkt. No. 16) is denied;

3.    The decision of the ALJ is REVERSED and the case is REMANDED to the Commissioner for further proceedings consistent with this Order;

4.    The Clerk of Court enter judgment in favor of plaintiff.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within fifteen (15) days after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    May 10, 2012**                    **/s/ Barbara A. McAuliffe**
                                            UNITED STATES MAGISTRATE JUDGE