UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD CATHEY,<br><br>   Plaintiff,<br><br> v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>   Defendant. | Case No. 1:10-cv-01562-LJO-BAM<br><br>**FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES AND COSTS** |

  Before the Court is Plaintiff Donald Cathey's ("Plaintiff") motion for attorneys' fees and costs under the Equal Access to Justice Act (28 U.S.C. § 2412(d)) ("EAJA"). (Doc. 20). The Commissioner of the Social Security Administration ("Commissioner" or "Defendant") objects to Plaintiff's request, contending that Plaintiff is not entitled to fees and that the amount requested is excessive and unreasonable. (Doc. 21). For the reasons that follow, the Court **GRANTS** Plaintiff's application, but reduces the amount awarded from $9,255.76 to $6,742.53.

**BACKGROUND**

  On August 27, 2010, Plaintiff brought this action challenging the Commissioner's final decision denying his claim for disability benefits under Title II of the Social Security Act. (Doc. 1). On June 5, 2012, the Court issued an order reversing the ALJ's decision, remanding the case for further proceedings, and directing that judgment be issued in favor of Plaintiff. (Docs. 17, 18).

  The Court found that the ALJ had committed two errors. First, the ALJ failed to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's subjective symptom testimony. *See*

1

*Mersman v. Halter,* 161 F.Supp.2d 1078, 1086 (N.D.Cal. 2001).  Second, the ALJ failed to provide "specific and legitimate" reasons for giving no weight to the opinion of treating physician Thomas O'Laughlin, M.D.  *See Lester v. Chater*, 81 F.3d 821, 839 (9th Cir. 1996).  Based on the ALJ's errors, the Court concluded that the Commissioner's decision must be reversed.

## DISCUSSION

28 U.S.C. § 2412(d)(1)(A) provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust. 28 U.S.C. § 2412(d)(1)(A).

When a claimant wins a remand based on an incorrect decision by the Commissioner (a "sentence-four" remand), attorneys' fees are to be awarded unless the Commissioner shows that she was "substantially justified" in her position.  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  Here, the parties do not dispute that Plaintiff is the prevailing party.  The Commissioner contends, however, that the government's position was substantially justified.

The EAJA does not define "substantial justification."  The Supreme Court, however, has defined it to mean "justified in substance or in the main" or "to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 566 (1988).  "A position can be justified even though it is not correct, and we believe it can be substantially (*i.e.,* for the most part) justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *Id.*  The Seventh Circuit restated this standard as "whether the agency has a rational ground for thinking it has a rational ground for its action."  *Kolman v. Shalala*, 39 F.3d 173, 46 (7th Cir. 1994).  The Commissioner must show that her conduct was reasonable at each stage of the proceedings.  *Flores v. Shalala*, 49 F.3d 562, 572 (9th Cir. 1995).

**A.    The ALJ's Rejection of Plaintiff's Testimony Lacked Substantial Justification**

Plaintiff had diabetic neuropathy and carpal tunnel syndrome, causing pain and numbness in his hands, feet and legs.  Standing made the pain worse.  Pain medications helped, but affected his

concentration. He also had pain in his back, hip, and shoulders. He had difficulty raising his right arm above his shoulder, and despite several surgeries had pain with the full range of motion in his left. He could do laundry, cook, sweep, dust, do dishes, take out trash, rake leaves, and prune trees. He could drive, though not for a long time, and could shop. He spent a typical day at home, reading, watching television, and carving wood or making model airplanes. The carving had become difficult due to hand and shoulder pain. In an eight-hour day, he could sit for six or seven hours and stand for three, with frequent breaks. He could stand fifteen minutes at a time, sit for an hour (with his feet up), use his hands for about twenty minutes, and reach forward for ten to fifteen minutes.

The ALJ found that Plaintiff underestimated his ability to stand, sit, walk, and manipulate objects. The ALJ explained:

> [Plaintiff's] alleged level of disability is not consistent with the activities of daily living as outlined in the documents he filed. The wood carving activity and model airplane building, the household chores and cooking he does do not appear consistent with the disability he claims.

AR at 19. The Commissioner defended this reasoning, explaining that "as part of a credibility analysis," the ALJ was entitled to rebut Plaintiff's allegations by using his "extensive" activities of daily living to show that he was in fact "quite functional." (Doc. 14 at 17). Plaintiff's carving and model-airplane making "undermined his allegations about hand limitations." *Id.*

The Court disagreed. The ALJ failed to provide "specific, clear, and convincing reasons" for rejecting Plaintiff's testimony. Although Plaintiff's activities undermined the claimed limitations in his hands and shoulders, they were insufficient to reject his inability to stand, walk, or sit for long periods of time, and had no bearing at all on his sitting limitations. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." *Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2011). "[M]any home activities are not easily transferable to … the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989).

Although the ALJ erred in rejecting Plaintiff's alleged limitations in standing and walking, the Court finds that the ALJ at least had substantial justification in doing so. Even if Plaintiff's extensive activities did not compellingly rebut these limitations, they did at least conflict with them.

However, the same is not true of Plaintiff's sitting limitations. The Court found that these limitations and Plaintiff's activities did not conflict at all, and the ALJ "failed to provide any reason" for rejecting them. This error was inconsistent with the Commissioner's own regulations. *See* 20 C.F.R. § 404.1529 ("Factors relevant to your symptoms, such as pain, which we will consider include: … The location … of your pain"); *Sampson v. Chater,* 103 F.3d 918, 922 (9th Cir.1996) (suggesting that it is an abuse of discretion to find an agency's position substantially justified when the agency violates its own regulations).

Defendant argues that, because Plaintiff's alleged manipulative limitations conflicted with his ability to carve wood and make model airplanes, this conflict "clearly called his overall credibility into question." Defendant notes that, in the context of immigration hearings, "a person who is deemed unbelievable as to one material fact may be disbelieved in all other respects." *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1059 (9th Cir. 2005). However, the ALJ never raised this argument. Just as the Commissioner cannot rely on post-hoc rationalization to defend an ALJ's finding of nondisability, she may not do so to show that the government's position was substantially justified. *Fed. Election Comm'n v. Rose*, 806 F.2d 1081, 1089 (D.C. Cir. 1986). The ALJ's stated reason was that Plaintiff's alleged limitations were not consistent with his daily activities. Although both the ALJ and the Commissioner discussed credibility in general terms, they did not discuss his credibility with respect to this issue, and did not discuss any other credibility issues. One could just as easily conclude that the ALJ rejected Plaintiff's sitting limitations out of neglect or mistake. The Commissioner's position with respect to Plaintiff's credibility was not substantially justified.

**B.     The ALJ's Rejection of Dr. O'Laughlin's Opinion Was Substantially Justified**

Dr. O'Laughlin, a physiatrist and one of Plaintiff's treating physicians, first saw Plaintiff in February 2007. While he observed an "overall good outcome" from Plaintiff's shoulder replacement surgery, he characterized the shoulder as "markedly damaged, compromised and atrophied," with "restricted" rotation that caused "a great deal of discomfort." In April 2007, Plaintiff again had shoulder pain. In September 2007, although the shoulder joint itself was functioning "rather nicely," Plaintiff had persistent myofascial dysfunction in the left shoulder girdle and neck with constant pain, as well as carpal tunnel in his left hand and arthritis in his right shoulder. In May 2008, despite

4

pain and restriction of motion in Plaintiff's left shoulder, the outcome of his shoulder replacement was "quite good." At each of a half-dozen examinations, Plaintiff also showed marked neuropathy.

Partway through this course of treatment, in July 2007, Dr. O'Laughlin completed a questionnaire describing Plaintiff's functional limitations. Plaintiff could sit for 20-30 minutes and could stand or walk for 20-30 minutes. In an eight-hour day, he could sit for four hours, but he had to lie down or elevate his legs for two hours a day, and could lift only 10 pounds. Based on this assessment, Dr. O'Laughlin opined that Plaintiff was disabled.

The ALJ said that he gave "no weight" to Dr. O'Laughlin's opinion:

> The opinion is not supported by reasoning and does not contain a statement of objective findings and subjective complaints. The doctor does not discuss the opinion he expressed in his reports that the left shoulder joint is functioning nicely and that the claimant has a good result from a shoulder replacement surgery. The opinion expressed that the claimant is disabled is an opinion on an issue that is reserved to the Commissioner.

AR at 19. The Commissioner defended the ALJ's position, arguing that Dr. O'Laughlin's opinion was "unexplained and unsupported by objective evidence." Even if Plaintiff had identified objective findings that supported Dr. O'Laughlin's conclusions, his objective findings were "susceptible to more than one rational interpretation."

The Court found that the ALJ had erred. The ALJ failed to provide "specific and legitimate" reasons for giving no weight to Dr. O'Laughlin's opinion. The Court explained: "The ALJ is incorrect that Dr. O'Laughlin's opinion is not supported by reasoning and does not discuss objective findings and subjective complaints. While the one-page questionnaire may not contain this information, the Administrative Record contains a detailed account from Dr. O'Laughlin regarding Plaintiff's subjective complaints and Dr. O'Laughlin's objective findings."

Here, Dr. O'Laughlin's notes contained findings that supported his opinion. The ALJ considered some of these findings, but he erred because he did not demonstrate that he had considered all of them, including ones that obviously supported Dr. O'Laughlin's opinion. However, even if the ALJ did not support his position with substantial evidence, he did provide a reasonable amount of support. For example, the ALJ reasonably considered the fact that Dr. O'Laughlin's questionnaire did not present evidence or reasoning in support of its conclusions. Under 20 C.F.R. § 404.1527, an ALJ may rely in part on the "supportability" of an opinion, meaning

the amount of relevant evidence that a medical source presents to support his opinion as well as the quality of explanation that the source provides for the opinion. Here, Dr. O'Laughlin's opinion contained no supporting explanation, and although the opinion was accompanied by medical records, the opinion gave the ALJ no guidance in determining which of that evidence was supportive of that opinion. Two months earlier, Dr. O'Laughlin stated that Plaintiff "overall … had a good outcome from shoulder replacement surgery." The ALJ properly concluded that, in light of this apparent inconsistency, Dr. O'Laughlin ought to have given some sort of explanation. Although the Court found that the ALJ had erred by not providing reasons that were "specific and legitimate" for rejecting Dr. O'Laughlin's opinion, the Court nevertheless finds that the ALJ's position (and the Commissioner's defense of that position) was substantially justified, as the ALJ reasonably concluded that his decision had met this standard.

## C. The Government's Position Was Not Substantially Justified

In deciding whether the "position of the United States" was justified, some circuits also consider issues on which the government was successful. *See, e.g., Stewart v. Astrue*, 561 F.3d 679, 683-84 (7th Cir. 2009). However, in the Ninth Circuit, "district courts should focus on whether the government's position on the particular issue on which the claimant earned remand was substantially justified." *Hardisty v. Astrue*, 592 F.3d 1072, 1078 (9th Cir. 2010); *see Flores*, 49 F.3d at 569.

A more difficult issue is identifying the "position of the United States" when, of several remanded issues, some but not all lack substantial justification. The Ninth Circuit has not confronted this situation, and other courts have reached divergent results. *See, e.g., Fabi Const. Co., Inc. v. Sec'y of Labor*, 541 F.3d 407, 413 (D.C. Cir. 2008) (awarding fees only for work attributable to unjustified positions); *Boatmen's First Nat. Bank of Kansas City v. United States*, 723 F. Supp. 163, 170-71 (W.D. Mo. 1989) (same result, "[w]here, as here, the issues are so separate and capable of allocation, an all-or-nothing award would be unfair and inappropriate"); *Koschnitzke v. Barnhart*, 293 F. Supp. 2d 943, 952 (E.D. Wis. 2003) (awarding full fees where positions on two of three issues lacked substantial justification and were "fundamental errors;" position was not justified "as a whole"). The Seventh Circuit has acknowledged that the idea of allocating fees only to successful issues "merits further discussion," but declined to do so because the plaintiff had asked for "all or

1 nothing." *Gatimi*, 606 F.3d 344, 349-50 (7th Cir. 2010) (Posner, J.).  Because the unjustified
2 position was the "more prominent" one, it found that the government's position was not justified "as
3 a whole." *Id.*, *citing Al-Harbi v. I.N.S.*, 284 F.3d 1080, 1085 (9th Cir. 2002) (using "as a whole"
4 standard in different context).

5 Here, as in *Gatimi*, since neither party has asked for an allocation, the Court considers
6 whether the government's position was justified "as a whole."  Although neither of the remanded
7 positions in this case is markedly "more prominent," they were interwoven as they stemmed from
8 the same ALJ decision, and each was sufficient to warrant the relief won in this case.  The Court
9 finds that the improper rejection of Plaintiff's testimony was sufficiently "prominent" to make the
10 position of the United States unjustified "on the whole."  Plaintiff is entitled to all reasonable fees.

11 **D.     Plaintiff's Fee Request Must Be Modified**

12 As the Court has determined that Plaintiff is entitled to recover attorney's fees for the work
13 performed, the Court must next determine what constitutes a reasonable award of attorneys' fees.
14 *See* 28 U.S.C. § 2412(d)(2)(A); *Gates v. Deukmejian*, 987 F.2d 1392, 1401 (9th Cir. 1992) (district
15 court has an independent duty to review Plaintiff's fee request to determine its reasonableness).

16 **1.     Legal Standard**

17 Under the EAJA, attorneys' fees must be reasonable. 28 U.S.C. § 2412(d)(1)(A); *Perez-*
18 *Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002).  The applicant bears the burden of
19 demonstrating the reasonableness of the request.  *Blum v. Stenson,* 465 U.S. 886, 897 (1984).  The
20 Ninth Circuit has held that the lodestar method should be used to determine what constitutes a
21 reasonable fee under the EAJA. *See Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th
22 Cir. 2012).  To calculate the lodestar amount, the court multiplies the number of hours reasonably
23 expended on the litigation by a reasonable hourly rate. The request should exclude hours that are
24 excessive, redundant, or otherwise unnecessary.  *Id*.

25
26
27
28

### 2. Hourly Rates

The EAJA provides that fee awards should be "based upon prevailing market rates for the kind and quality of the services furnished," and that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor ... justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A). Although the cost-of-living increase can be calculated, the Ninth Circuit maintains a list of the maximum hourly rates for each year. *See Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005); http://www.ca9.uscourts.gov.

Here, Plaintiff requests the published maximum rates of $175.06 per hour for work performed in 2010, and $180.59 for work performed in 2011 and 2012. Before Plaintiff filed this motion, the Ninth Circuit increased the 2012 rate, then increased it again after the filing, to $184.32. The Court finds Plaintiff's request for a cost of living adjustment to be reasonable in light of the kind and quality of services furnished, as well as the lack of argument suggesting otherwise by Defendant. In the past, this Court has given the benefit of rate increases that have occurred after the fee increase was filed. *See Forsythe v. Astrue*, 1:10CV1515 AWI-GSA, 2013 WL 1222032, * 2 (E.D. Cal. Mar. 25, 2013). The Court applies the requested rates for 2010 and 2011, and the increased rate for 2012.

### 3. Number of Hours

#### a. Confidential Letter Brief and Opening Brief

Plaintiff seeks 13.7 hours to prepare a confidential letter brief (1 hour on 11/14/11 reviewing the transcript, 8 hours on 2/2/11 drafting the brief, 4.7 hours on 2/4/11 finalizing it). She also seeks 15.3 hours preparing the opening brief (7.8 on 4/12/11 drafting it, 7.5 hours on 4/13/11 finalizing it). Defendant argues that 29 hours is an unreasonable amount of time for these overlapping activities.

Here, the opening brief was 24 pages. While it raised some unsuccessful issues, the arguments were well-researched, well-presented, and emphasized the issues that formed the basis for remand. At the same time, the Court has often noted that preparing the confidential letter brief "likely frames the issues and allows some crossover for the Opening Brief." *Pao Mee Xiong v. Astrue*, 1:10CV01135 AWI-DLB, 2012 WL 570052, *4 (E.D. Cal. Feb. 21, 2012).

In *Oberdieck v. Astrue*, Judge Beck considered a very similar request: 28.2 hours for writing a confidential letter brief and opening brief (21 pages, presenting five well-developed issues). *Oberdieck*, 1:10C01692 AWI-DLB, 2012 WL 3270460 (E.D. Cal. Aug. 9, 2012). Based on the fact that the attorney (a colleague of Ms. Bosavanh's) had already spent 13.6 hours preparing the confidential letter brief, and based on the relatively routine nature of the issues presented, Judge Beck cut the time allotted to the opening brief, reducing the total allotted to the two activities to 23.6 hours. This is a reasonable amount of time for these overlapping activities. The Court allots 9.9 hours (5.4 fewer hours) in 2011 to Plaintiff's opening brief.

### b. Reply Brief

Plaintiff seeks 13.1 hours drafting a reply brief (1.5 hours on 5/12/11 to analyze Defendant's opposition, 7.1 hours on 5/27/11 preparing the draft, and 4.5 hours the same day finalizing it). Notably, 11.6 hours occurred on a single day. As Defendant points out, this reply brief contained some new but largely repetitive material from the opening brief. *See Stairs v. Astrue*, 1:10-cv-00132-DLB, 2011 WL 2946177 at *10 (E.D. Cal. July 21, 2011) (calling 16 hours for a reply brief "simply excessive" when it repeated arguments "that were already thoroughly presented in the opening Brief," and reducing by half, to 8 hours). Following *Stairs*, the Court finds that a single 8-hour workday (5.1 fewer hours in 2011) is a generous amount of time to write a reply brief of this quality.

### c. EAJA Documentation

Time spent in establishing the entitlement to and amount of the fee is compensable. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008). *Cf. Corbin v. Apfel*, 149 F.3d 1051, 1053 (9th Cir. 1998) (fee award apportioned to stages of case in which government lacked substantial justification). Plaintiff seeks 1.8 hours for EAJA documentation (1.5 hours on 9/3/12 preparing her time report, and 0.3 hours on 9/4/12 reviewing it for submission). Previously, judges in this division have observed that "repeated rulings" on Ms. Bosavanh's applications for EAJA fees "have revealed the similar nature of the[ ] EAJA petitions and billing statements." *Lopez v. Astrue,* 2012 U.S. Dist. LEXIS 78680, at * 14, 2012 WL 2052146 (E.D. Cal. June 6, 2012). In January of this year, a court in this division reduced a 2.5 hours request by Ms. Bosavanh to 1.5 hours. *Brumley*

1 *v. Comm'r of Soc. Sec.*, 1:11-CV-00253-LJO, 2013 WL 100249 (E.D. Cal. Jan. 7, 2013). In late March, another judge reduced her award to 0.5 hours, again noting the "repeat rulings" and observing that this amount was consistent with other awards in this district. *Forsythe*, 2013 WL 1222032. The Court recommends 0.5 hours (1.3 fewer hours in 2012) for these tasks.

### d. Reviewing Documents

Plaintiff requests time for "reviewing" various ECF filings and minor correspondence. A majority are single-page documents or standard forms which a practitioner such as Ms. Bosavanh, who is familiar with Social Security appeals in this Court, should require "no more than two to three minutes" to review. *Green v. Astrue,* 2012 U.S. Dist. LEXIS 51768, at *8, 2012 WL 1232300 (E.D. Cal. Apr. 12, 2012).

| **Date** | **Activity Description** | **Time Spent** |
|---|---|---|
| 7/17/10 | Review federal court documents to be sent to client | 0.2 |
| 7/29/10 | Review fed court documents from client | 0.2 |
| 8/30/10 | Review documents from court re: order granting, sched order, etc. | 0.3 |
| 9/17/10 | Review document to decline to proceed before magistrate judge | 0.1 |
| 9/23/10 | Review clerk's notice entered | 0.1 |
| 9/29/10 | Review certified mail receipt from US Attorney; give to staff to file | 0.1 |
| 9/29/10 | Review certified mail receipt from Commissioner; give to staff to file | 0.1 |
| 10/18/10 | Review consent to magistrate entered by OGC attorney | 0.1 |
| 10/27/10 | Review certified mail receipt from Attorney Gen.; give to staff to file | 0.1 |
| 1/14/11 | Review notice of lodging of transcript | 0.1 |
| 1/14/11 | Review acknowledgment of receipt of transcript | 0.1 |
| 10/17/11 | Review court order from Chief judge re: reassignment | 0.1 |
| 6/5/12 | Review court order adopting findings and recommendations | 0.2 |
| 6/5/12 | Review court judgment in favor of plaintiff | 0.2 |
| | Total time: | **2.0** |

The Court finds many of these entries excessive. This is not the first case in which "Ms. Bosavanh reports excessive time to review a number of documents routinely filed in Social Security

1  actions." *Brumley*, 2013 WL 100249 at *4. An experienced practitioner should not take six minutes to review a notice of lodging transcript, an acknowledgment of receipt of transcript, or certified mail receipts. Given that Ms. Bosavanh previously had spent 42 minutes reviewing the findings and recommendations, the Court finds excessive an additional 24 minutes to review the one-page judgment and the two-page order adopting the F&Rs, both of which simply recapitulated the recommendation of the magistrate judge. Thus, these numbers are excessive in light of Ms. Bosavanh's experience. The Court recommends that these two hours (1.3 in 2010, 0.3 in 2011, 0.4 in 2012) be disallowed entirely.

### e. "Preparation" of service documents

Intentionally omitted from the table above are the 0.2 hours that Ms. Bosavanh spent on 9/17/10 to "Review documents to serve three govt defendants." Although Ms. Bosavanh does not explain what documents she prepared for service, the documents authorized for service were the complaint, the summons prepared by the Court, and the Court's order granting Plaintiff's motion to proceed *in forma pauperis*. Previous time entries show that Ms. Bosavanh had already reviewed these documents; the only further step would be to print them and serve them. As Ms. Bosavanh has previously been admonished, this clerical work is not typically compensable under the EAJA. *Brumley*, 2013 WL 100249 at *4. The Court recommends that it be disallowed.

### 4. Total Fee Award and Payee

Plaintiff is entitled to $6,742.53 in fees, as follows: applying the new 2012 hourly rates, Plaintiff has requested $9,268.84 for 51.4 hours of work. This is reduced by $2,526,31 or 14 hours, consisting of 5.4 hours in 2011 (opening brief); 5.1 hours in 2011 (reply brief); 1.3 hours in 2012 (EAJA documentation); 1.3 hours in 2010, 0.3 hours in 2011, and 0.4 hours in 2012 (reviewing documents); and 0.2 hours in 2010 (service documents).

This amount would normally be awarded to Plaintiff, the prevailing litigant, subject to offset for applicable government debts. *Astrue v. Ratliff,* 130 S.Ct. 2521, 2522 (2010). Plaintiff asserts that he has assigned his EAJA fees to his attorney. Another judge in this district has respected such an assignment where the plaintiff provided proof of the assignment. *Thompson v. Astrue*, 2:11-CV-

0429 EFB, 2012 WL 5949218 (E.D. Cal. Nov. 28, 2012).  Absent any such proof, the Court recommends that payment be made to Plaintiff.

**5.     Costs**

Plaintiff seeks $47.66 for costs incurred during the action.  She has documented these costs, and Defendant does not oppose them.  The Court recommends the request be granted.

## CONCLUSION

Based on the foregoing, the Court **HEREBY RECOMMENDS** that Plaintiff be granted $6,742.53 in fees and $47.66 in costs.

These findings and recommendations will be submitted to the Honorable Lawrence J. O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(1).  Within fifteen **(15)** days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst,* 951 F.2d 1153 (9th Cir.1991).


IT IS SO ORDERED.

Dated:   **April 18, 2013**                /s/ *Barbara A. McAuliffe*
                                                             UNITED STATES MAGISTRATE JUDGE